CALEB S. LAYTON, plaintiff in error *vs.* THE STATE for the use of William Hazzard and wife, defendants in error.

A. by will directed his personal estate to be divided equally between his three children " when they arrived to the age of maturity." Administration with the will annexed was granted, and bond given more than *six* years before the youngest child came of age. An act of limitation was passed, barring suits on such bonds in *six* years *from their date*, but providing that if the person entitled to an action was under the disability of *infancy* or *coverture* at the *time of the accruing of the cause of such action*, that act should not be a bar to such action *during the disability*, nor for *three years after*. *Held*, that the action of the legatee, brought within three years after attaining full age was not barred.

The legatee married during infancy, and was under coverture when she attained full age. *Held* that a suit brought by husband and wife for the wife's right was not barred.

*It seems* that an act of limitation which takes away a remedy on a contract *before the right of action accrues* is unconstitutional.

WRIT OF ERROR to the Justices of the Superior Court in Sussex county.

Coram, JOHNS, JR., Chancellor, MILLIGAN, Justice, and WM. H. ROGERS, a judge ad litem in place of Judge LAYTON.

The case came up on a writ of error to the judgment of the Superior Court in Sussex county, in an action of debt on an administration bond, dated 11th January, 1826, at the suit of the State for the use of Wm. Hazzard and wife, a legatee of John Wilson, dec'd., against Caleb S. Layton, who was administrator of the said John

Wilson. (See *ante* 469.) The defendant in the action below craved oyer of the bond, set out the condition, which was in the usual form, and pleaded among other pleas, payment and a set-off for necessaries furnished plaintiff's wife before marriage, and the act of limitation. Issue on the pleas of payment, &c., and, as to the plea of limitation, replication that the said John Wilson, dec'd., by his said will dated, &c., duly proved, &c., did devise that his estate after payment of legacies, should be equally divided between his son David, James and Elexine Wilson, "when they arrive to the age of maturity;" that said Elexine married plaintiff 9th of January, 1834, that she arrived at maturity on 22d of June, 1840, and that this suit was brought within three years after, &c. Demurrer to this replication and joinder.

The Superior Court, after argument, overruled the demurrer, and gave judgment for plaintiff.

*Ridgely,* for plaintiff in error.—The replication to the third plea is defective. 1st. Because it does not aver that the three children had arrived at age. 2d. Because it does not aver that assets came to the defendant's hands applicable, &c.

Every plea must stand by itself and cannot be supported by any other unless by express reference it adopt the other. 1 *Ch. Plead.* 448, 290, [397;] 382, 444, [618.] The demurrer, therefore, ought to have been allowed, and there was error in overruling it.

2d. But the important question arises on the plea of the act of limitation, supposing this replication proper in form. This is an action on an administration bond brought more than six years from its date. The act of limitation is pleaded, and the question is whether it applies. *Dig.* 397, *sec.* 1 provides, that no action shall be brought on any administration bond after the expiration of six years from the date of such bond. Sec. 2 bars suits on guardian bonds after three years from the ceasing of the guardianship. Sec. 5 bars actions of trespass or on the case after three years from the accruing of the cause of action. Sec. 6 provides, that if the person entitled to any action within either of these sections shall have been at the time of the accruing of the cause of such action under disability of infancy, coverture, or incompetency of mind, this act shall not be a bar to such action during the continuance of such disability, nor until the expiration of three years from the removal thereof.

The disability protected by Sec. 6, is a personal disability, and not intended to apply to any other than the person under such disability. William Hazzard was not under any disability of infancy, and can-

not take advantage of his wife's disability of coverture.   This is his suit and not the suit of the wife.   It is his suit to reduce the wife's chose in action into possession : so far it is a suit against her interest, and his suit is not protected.   S*hankland's case; State use of Hazzard and wife* vs. *Wilson's adm'r.*, ante 348 ; *Cro. Car.* 200 ; 3 *Barn. & Ald.* 474 ; *Com. Dig.* 635, *tit. Att'y.* 17 ; *Dyer* 377, a. ; 2 *Brown's Ch. Cases* 345 ; *Co. Litt.* 246, 403 ; 2 *H. Blac.* 584 ; 2 *Inst.* 518 ; 1 *Leonard* 211 ; 1 *Saund.* 120, 121 ; 1 *Blac. Com.* 442 ; 2 *Leigh N. P.* 1082.)   Infancy is a personal privilege of which no other person can take advantage.   (4 *Esp. Rep.* 187 ; 1 *Chitty's Blac.* 466, *n.* ; *Bal. Lim.* 207-8-9, 317-15.)

3. A testator cannot by his will repeal the general law of limitation.   If he postpones payment of a legacy for twenty years, can it be contended that the legatee might sue the administration bond after the lapse of *twenty* years, when the law says no such suit shall be brought after *six* years from the date of the bond ?   (1 *Law Lib.* 12; [*Blanch. Lim.* 23,] 1 *Law Lib.* 20 ; [*Wilkinson* 38,] 1 *Law Lib.* 1, 2, 3, 4 ; [*Blanch* 1, 2, 3, 4,] *Wilkinson* 12, 13 ; 1 *Wm. Blac.* 287 ; 4 *T. Rep.* 309, 517 ; [*Dwarris* 690, 694, 756, 703,] 10 *Mod.* 24 ; 6 *Barn. & Cress.* 712 ; 10 *Ibid* 52 ; *Balantine on Lim.* 178, 207, 209 ; 3 *Bing.* 196 ; 8 *Barn & Cress.* 104, 164 ; *Dwarris* 710, 718.)

4. It does not appear by the verdict in this case that the damages were assessed on occasion of the breaches assigned.   (*Dig.* 77.)

5. The 3d and 4th breaches are defective in substance.   The will provided that the legacies should be paid when the three children came of age, and plaintiff does not show a cause of action, without averring that David and James, as well as Elexine, had attained full age.

*Houston* and *Wootten,* for defendants in error.—The meaning of the will is not that payment of any, portion of the estate should be postponed until all three of the children should arrive at age ; but that the share of each was payable upon his or her coming of age.   This has always heretofore, been the undisputed construction of the will, and the administrator acted on this construction by paying each as they came of age.   It was not necessary then for us to make any averment that David and James Wilson had come of age.   The right of action of Mrs. Hazzard, accrued on her coming of age.   The money then being payable only on her arriving at age, her cause of action did not accrue during infancy, but only on her attaining majority ; and in this respect, this case differs from the case of *Hazzard* and *Layton,* on appeal from the Orphans' Court, which has been cited here, and in which a majority of the court de-

cided that the act of limitations was a bar, and the replication of infancy of Mrs. Hazzard, did not prevent the bar of the statute.

That decision was on the ground that William Hazzard had had three years within which he might have filed his exceptions, and there was no reason to save him from the bar of the statute on the protection of his wife's infancy. But in this case Mrs. Hazzard never could bring suit. She does not seek protection in this case on the replication of infancy, to the plea of the statute, but on the special replication showing that the cause of action, did not accrue until three years of commencing suit.

The question then is, does the act of limitation bar such a claim as this? We maintain that it does not. 1st. The acts of limitation do not apply to cases not coming within their purview. A thing within the letter of the statute is not within the statute, if not within the object and meaning. (9 *Law Lib.* 34, 41-3-4 46, 48, 50, 57, 77, 79, 80.) On these principles, the court will construe the act of limitations reasonably, having in view its objects; but still not oppressively, and not to the absurd extent of making it prevent instead of limiting the action. Its object is to compel persons having a right of action, to exercise that right within a limited time. And where the construction is doubtful, the court may regard the consequences in fixing a construction. (*Dwarris on Stat.* 1 *Harr. Rep.* 77, *Jones* vs. *Wootten*; 2 *Harr. Rep.* 184, *Luby* vs. *Cox.*) Any other construction of this act will make it unconstitutional and void under the constitution of the United States. (*Art.* 1, *sec.* 10.)

The bond was executed in 1826. The act of limitations was passed in 1839. This bond is a contract. (1 *Harr. Rep.* 102, *Bishop* vs. *Wild's adm'r.*) The obligation is that which the contract binds the party to do. The obligation of a contract is one thing, the remedy another, the one cannot be touched, the other may be limited. But the remedy cannot be taken away before it accrues, without violating the obligation. For without some remedy, some power to enforce the contract, there is no obligation.

By the very terms of this contract it was executory, and could not be performed within ten years. The defendant bound himself by that contract to pay Elexine Wilson, when she attained maturity; but thirteen years before she arrived at age, the legislature passed an act of limitation, which by the construction of the other side barred all action on that contract in six years after its date; that is, took away all the remedy before it arose. Such a law would be unconstitutional. (3 *Story's Com.* 250, 256, 264-5, 268.)

The act of limitations with their construction, is void by the constitution of the State of Delaware. The contract of defendant, bound him to pay to Elexine Wilson a sum which has since been ascertained to be $3,109 84, when she came of age, her right to it was vested under the contract, but her remedy did not arise until majority. A law passed in the mean time, talking away her remedy entirely takes away her property without compensation, and is void under the constitution of Delaware, as well as under the constitution of the United States. (1 *Harr. Rep.* 81, *Jones* vs. *Wootten.*)

*Frame* in reply :—The case has been argued as if this was the case of an infant suing for a legacy left her by her father, and the trustee is setting up a defence of the act of limitations, to defeat *her* right. It is no such case. This is not *her* suit. It has been decided by this court that it is not her suit. It is the suit of William Hazzard, nay not William Hazzard, but of his creditors, who are seeking to get possession of Elexine Wilson's property, placed under this defendant's protection, and to take it from her forever. If there were any thing of moral consideration entering into this cause in this court, it would be difficult to show the immorality of this trustee availing himself, and shielding Elexine Hazzard, by an undoubted legal defence. Whenever Mrs. Hazzard shall be discovert and in a condition to be benefitted by a recovery of this claim, it will be time enough to call on this defendant and his sureties to waive a legal defence for the sake of a moral duty.

The plaintiffs assume that the cause of action did not accrue until after Mrs. Hazzard attained maturity, and then not seeking protection under the 6th section of the statute, which refers only to causes of action accruing *during* the disability of infancy, &c., they take the broader grounds, 1st. That this case is not within the purview of the statute, and therefore not within its limitation. 2d. That if it is, the statute is unconstitutional.

The 1st section plainly declares, that no action shall be brought on any administration bond after six years. The 12th section as plainly declares that it shall apply to bonds theretofore taken as well as those taken thereafter. The 6th section excepts all the cases which the legislature intended to except out of the statute, and that does not include the case of a debt not falling due within the six years, as an exception. If the legislature intended to except such a case they would have done it, for the case is not so uncommon, but that they must have considered it. Their exceptions all have reference to disabilities of the person, and not disabilities connected with

the debt itself. (*Blanch. Lim.* 23; 12 *Strange* 1257.) And there is reason why such a debt should not be protected; for sureties could not be got in administration bonds, if the time of liability was extended so indefinitely.

Is the act unconstitutional?

In respect to contracts arising after the law, I do not understand that its constitutionality is controverted; for independently of it being a law effecting remedies, it could be defended even though it prohibited all such contracts. The position is that in this case, it is unconstitutional by reason of its retrospective operation on this contract, which had been made before the law. The act does not impair the obligation of the contract. 1st. Because it is a law referring to the remedy under the contract, and not to its obligation. 2d. Because the law of the remedy was not changed by the act of limitation of 1829. The act of 1766 and the exceptions are the same, or quite as liberal. (1 *Del. Laws* 424 *sec.* 14). The later law, was a mere revision of the act of 1766, which was re-enacted in the course of the general revision in 1829. The law of the remedy, is the gift of the legislature and within their control; and no one certainly can be injured either as to right or remedy, by a revision of a law, when the new law leaves both precisely as they were under the old. (3 *Story's Com.* 250-1.) But if the change of remedy in 1829, was a matter to be complained of, it could be only by the parties to the contract, who were the State on the one side for the use of Elexine Wilson, and the defendant and his sureties on the other. Willliam Hazzard married Elexine Wilson long after this, and the rights which he derived by the marriage, were merely derived by the law of 1829, subject to the control of the same law. And if the legislature had entirely taken away the remedy on the bond, they would not have taken away *all* remedy; for there still existed by law the action of debt or assumpsit at law, and the remedy in a court of equity. (*Dig.* 228. 370.)

The protection of disability of infancy and coverture is personal to the wife and cannot enure to the benefit of the husband. By marriage the legal existence of the wife ceases, and becomes merged in the husband. She can do no act. This can be, therefore, in no sense the wife's suit. (1 *Blac. Com.* 142, 442.) As to a large portion of the wife's property, marriage operates as an absolute gift to the husband, he takes it by purchase in derogation even of the wife's right. (2 *Kent Com.* 135.) So in regard to choses in action, the marriage equally makes them the property of the husband, if he, not

she, shall reduce them to possession during the marriage. It is not the suit of the wife, because it is not to recover any thing *for* her : not for the right of the wife per se, but for a right of the husband, his by the marriage, even against the wife. It is no more her suit than the suit of an assignee who has to name the assignor to derive title through him, is the suit of the assignor. Then if this be the suit of the husband, it follows that the exception of the statute which is personal to the party under disability, can never apply to him.

The verdict and judgment are general; and if *any* of the issues are erroneous, the verdict is erroneous. The third and fourth breaches are defective. They show that by the will the money was not payable until all three of the children came of age, and there is no averment that they had all come of age. The condition of the bond is not followed; there is no averment that the register had by decree limited and appointed any sum to be paid. And these defects are not cured by the verdict. (*Ch. Pl.* 402; 8 *Del. Laws* 43.)

*By the Court.*

JOHNS, JR., *Chancellor.*—In the argument of this case it appears the counsel for the plaintiff in error consider the claim for which the judgment was rendered, could not be recovered by action on the administration bond, because six years had elapsed from its date before suit brought, and the party entitled to the amount of the judgment, relies upon the sixth section of the act of limitations, and especially the words thereof, that "this act shall not be a bar to such action during the continuance of such disability" as excluding the action brought by husband and wife, from the operation of the act during coverture. It has been said the court in rendering the judgment in this case, proceeded upon a construction of the sixth section, different from that which they had given to the eleventh section of the same act. The eleventh section provides, "that the limitation in respect to any person under disability of infancy, coverture, or incompetency of mind, at the time of settlement of such account, shall begin to run from the ceasing of such disability, and not from the time of settlement." It has been conjectured that the peculiar phraseology of the sixth section, relative to actions, was adopted to avoid the effect of the decision of the High Court of Errors and Appeals, in Shankland's case, by which it was adjudged that the husband was not within the saving clause of the former act of limitation.

The uniform current of decisions in England as well under the

statute of fines, as that of 21 *Jac.* 1, having restricted the husband's right of action within the limits allowed after disability, and regarded the statute as commencing to run against the husband from the time of marriage and accruing of the cause of action, when there existed a party to be sued and a jurisdiction competent to decide, and our own State courts having hitherto adopted and adhered to the same rule of construction, it is proper that the subject should be well considered before venturing upon a change.

The difficulty that has occurred in adopting a uniform rule of construction for the 6th and 11th sections of our act of limitations, appears to have resulted from the verbal variation. It has been supposed that the words of the 6th section which declare, that "this act shall not be a bar to such action," are intended to have a different effect from those of the 11th section, which expressly provide "that the limitation as to any person shall begin to run from the ceasing of such disability:" as if the saving in the former applied to the action, and the latter to the person and not the right of suit.

The embarrassment evidently, was occasioned by allowing particular words undue weight, without a sufficient regard to the design and intent of the act as one of limitation. Similar doubts arose upon the English statutes of limitation in consequence of the peculiar import of particular words, and difficulties arose out of the varied phraseology, until the adjudged cases settled a uniform rule of construction. In reference to this subject, Abbott, C. J., in the case of *Murray* vs. *East India Co.*, 5 *Barn. & Ald.* 204, after noticing the decisions which had settled the rule, remarked, that "the several statutes of limitation being all in pari materia, ought to receive a uniform construction, notwithstanding any slight variations of phrase, the object and intention being the same." I have already (he remarks,) quoted the words of the statute of fines. The words of the first section of the 21 *Jac.* 1, *ch.* 16, as it regards entry into lands are "that no person or persons shall make entry into any lands, &c., but within twenty years next after his or their right or title, which shall hereafter first descend or accrue to the same;" other slight variations of expression may be found in other parts of this and the statute 32 *Hen.* 8 *ch.* 2; but it is not necessary to particularize them; the object manifestly being, to limit the time of entry or suit to a person in esse capable of entering and suing, and nothing more. With equal propriety may it be said, that the saving or proviso in our act of limitation, as well in the 6th as the 11th section, is to protect the rights of persons during disability, and three years after removal

thereof, and nothing more. Each section applying to the personal right of instituting legal proceedings by suit or action, notwithstanding in one the word action, and in the other person, is used, for the law of limitation affects nothing but the remedy.

In considering the proviso contained in the sixth section the question to be settled, renders it necessary to ascertain and determine, when the act of limitation attaches or commences running. For until the act attaches and begins to run, and the whole period allowed for bringing the action has elapsed, the action is not barred. Hence during the life of the feme covert, and also during infancy or incompetency of mind of the person entitled to the action, the existing personal disability, prevents so far as relates to the person under disability, the act attaching. But the death of the person during disability by transferring the remedy to a representative competent to sue, the administrator of the wife would only have three years in which to bring his action, from the time of death, and grant of administration: and the same would be the case as to the representative of a person dying in infancy. Admitting this to be so, it is insisted that during the life of the feme covert, as during the minority of the infant, the right of action continues, and their rights are exempted from the limitation act, and cannot be barred thereby, and as a consequence thereof, the husband suing in right of his wife, is entitled to bring an action for his wife's choses in action at any time during coverture, for it is conceded that the guardian is not barred but may sue in the name of his ward at any time during the continuance of the infancy. It may be proper here to remark, that the wife's right of action equally with all the rights of remedy belonging to her as a feme covert, were saved by our former acts of limitation. As entitled to the action or the person entitled, during the continuance of the disability, her rights being saved, it was never supposed the limitation act affected her right of action. Hence I consider it must be conceded that the words of the proviso in the 6th section which declare, "that act shall not be a bar to such action, &c.," have not varied the condition of the wife's right of action from what it was, under all former limitation acts. It must be so, unless it can be said of those acts, that they suspended or barred her right of action during coverture, and after having thus attached and run during coverture, on the termination thereof, ceased to operate and were suspended for three years, so as to cause her right of action to revive and exist after the disability of coverture was removed. Such a supposition would be contrary to all former experience; would neces-

sarily take away all right of action from the husband, and would be contrary to the well known and long established rule, that the statute when it has attached and commenced running never stops, and no subsequent disability can prevent its continuing to run. From what has been said it is evident, the wife's right continued during disability, confers upon the husband, when he by marriage becomes the person entitled to the action, a right of action which he in the prosecution of his own action may in her right enforce, and avail himself of the legal remedy belonging to him as a marital right; and for this purpose he has the time allowed after disability removed, as the period which the law determines as the legal time granted to the wife after coverture, and he enjoys it precisely as she would when sui juris upon discoverture. The husband under the saving clause acquires and enjoys the full benefit of the legal time intended to be secured to the feme covert after disability removed, although he may not be entitled to avail himself as to his right of action, of his wife's disability, so as to exclude his right of action from the operation of the act of limitation, or prevent it attaching.

Under the former acts of limitation in this State it was considered, and in the case of Shankland's lessee decided, that the husband could not take advantage of his wife's disability, because he was not within the saving of the act, and none others than those embraced within it could take the benefit thereof. If then under the former acts the husband was excluded, and against him the act commenced running from the time of marriage and cause of action accrued, and the attaching and running of the act was not prevented by the wife's disability, when as against the wife and her right of action, the act did neither attach nor run; how can the words in the 6th section of the present act sanction a construction that would give to him not only the three years within which to determine whether he will bring his suit, and during all which time he is under no disability or impediment, and may bring his action, but also the whole time of coverture, which in case of his surviving would be during the life of his wife. It seems to me such a construction once established, would be a virtual repeal of the act of limitation in favor of husbands, and they might be induced to delay suit, when in the full possession of all their rights; thereby taking advantage of their wife's disability, caused by their own ability, contrary to the manifest design and intent of the act, and contrary to the law of limitation, as operating upon them in all other actions instituted for the collection of their own debts. Then the law designed to protect the feme covert in

her rights, the proviso expressly founded on her personal disability, and intended to secure her rights against the effects of the husband's omission or negligence in enforcing or collecting them, would be diverted from its original purpose, and would be allowed an effect very different from the intention of those who made it. It may well be asked why should such favor be extended to husbands above all other citizens, or upon what principle can such a construction be sanctioned, especially when in conflict with the law of limitation as understood and established by adjudged cases as well in England as our own State? Can the adoption thereof be warranted upon the ground either of expediency or necessity, or is it rendered imperative as being the lex scripta, and therefore unavoidable? Surely it cannot be considered either expedient or necessary. For as there exists no personal disability on the part of the husband, if the policy of the law of limitations is regarded, it manifestly, contravenes the essential principles thereof, and must therefore be considered inexpedient. Nor can it be held necessary, since the rule as heretofore established does not deprive the husband, but leaves him in the full enjoyment of his marital right of action, in this case three years, and in all cases the same time, the law considers sufficient, as the legal right of the feme when discovert, and all that he as her administrator surviving could have; it would, therefore, seem unnecessary to confer upon him when sui juris, an indulgence as to time greater than the law grants the feme under similar circumstances. With respect to the other or remaining ground relied on, that the law is so written, if this be true, then there remains no room for construction. But I apprehend the whole difficulty results from the fact that the law is not so written; and, therefore, we are required to determine the question by the legal rule of construction.

Having thus adverted to the several and distinct grounds related in favor of the husband's right of action during the whole period of the wife's coverture, and noticed the objection to establishing the same by construction, I shall now proceed to consider the proviso as contained in the 6th section, and the legal effect thereof.

The 6th section provides, " that if the person entitled to any action, comprehended within either of the foregoing sections, shall have been at the time of the accruing of the cause of such action, under disability of infancy, coverture or incompetency of mind, this act shall not be a bar to such action during the continuance of such disability, nor until the expiration of three years from the removal thereof.

In attempting a literal construction of this section, we must allow to all the words their appropriate meaning and effect. Therefore before we consider the word action, it becomes necessary to determine who is the person contemplated as entitled to the action, for the condition of that person must conform to the situation described, and essential in order to have the benefit of the proviso, and must be a person under disability, for the act is declared not to bar such action, and is evidently restricted to a person entitled who is under a disability, and none other. Hence arises the difficulty when we attempt to embrace the husband within the proviso, as the *person entitled* to the action, for the disability must effect the person entitled to the action, and it is only such action which the act does not bar. But it has been supposed we may reject the person in the proviso and consider the action as independent of the person entitled, as not barred, and the husband becomes by marriage entitled to the action in her right, the action being saved he is not subject to the operation of the act. It has been supposed that the husband's right of action continues during coverture, like that of an infant suing by guardian or a non compos by his trustee, which actions may be maintained at any time during the disability. It is true such actions are not barred, because they are always in the name of the minor or non compos, and therefore theirs exclusively, but the wife cannot maintain her action by her husband as the person entitled to the action, it would be an anomaly in legal practice. The right of action by marriage becomes a marital right, the husband capable, the wife incapable; being derived from her, the law requires that he should join her in the suit or action, for the purpose of showing that he is entitled to the chose in action in her right, and never has been considered as rendering the action hers. This could not be unless we reverse the effect of marriage, which in a legal sense merges the wife, and transfers all her personal rights to him, with full power by his action to recover possession, or by his own act to sell and assign the same. Their unity as making one person in law may be regarded as analogous to that of parceners who make but one heir; now it has been decided under the saving clause in the statute 21 *Jac.* 1, *ch.* 16, *sec.* 2, that if an estate descend to parceners, one of whom is under a disability which continues for more than twenty years, the disability of the one does not preserve the title of the other; and it is said by *Mansfield*, C. J., that no doubt so long as the disability of one parcener continued, the statue would not run against her, but that after twenty years had elapsed from the death of the ancestor,

the parcener who was free from disability could no longer have entered; and that it would be singular if she who had long lost her right of entry during the coverture of her sister, should have a right restored to her by the termination of the coverture. (2 *Taunt. R.* 441.) I have cited the preceding case as illustrating the effect of the statute of limitation upon joint rights involved in unity of title, and indicating how the right of the person under no disability may be barred, when that of the person under disability is saved from the operation of the act.

It may be said of the husband's right of action, in collecting the wife's choses in action, it involves that of the wife as her action enforces her right; still it must be conceded, that he is the person entitled to the action and under no disability, therefore his action cannot be saved.

Independent of the unity of right requiring joinder of husband and wife in bringing the action, if it be supposed they constitute in the legal technical sense two parties, the disability of the wife as one party cannot be of any avail to the husband, because it is now well settled that a replication to a plea of the statute of limitations must avoid the effects of the statute as to all the plaintiffs. The disability of one cannot be imparted to the others, and will not prevent the bar; all will be barred unless all be under the disability. (*Perry* vs. *Jackson*, 4 *T. R.* 516; *Marlettee* vs. *M'Clean*, 7 *Cranch. R.* 156.)

In the further consideration of the 6th section, it may be useful to inquire whether the peculiar phraseology thereof has not been occasioned by the declaration of the preceeding sections, that "no action shall be brought unless within six years from the date of the bond, and in the other enumerated cases within the time prescribed from the accruing of the cause of action." The legislature having by the act expressly enacted in each of the five sections preceeding the sixth, which contains the proviso we are considering, that no action shall be brought after the limitation prescribed, thereby negativing and taking away all and every description of action, whether founded on contract or legislative acts authorizing suits on official bonds to the State; it certainly was right and proper, that the rights of persons under disability should be guarded by words sufficiently clear and explicit, leaving no doubt of their being amply and fully protected.

To accomplish this object they adopted the plain and unequivocal language in that part of the proviso which says, "this act shall not be a bar to such action during the continuance of such disability, nor

until the expiration of three years from the removal thereof," precisely the same as if they had declared the act should not run during the disability, nor until the expiration of three years from the removal thereof, because the act never bars the action until it has run and the time within which the right of action is allowed to be prosecuted has expired, In conformity with this intention, as I understand it, and for the purpose of effecting the same object, the 11th section after limiting the time of excepting within three years from the settlement of executor's, administrator's or guardian accounts, provides in respect to persons under disability at time of settlement, that the limitation shall begin to run from the ceasing of such disability, and not from the time of such settlement. Having thus arrived at the conclusion relative to the two sections, that they are the same in effect and equally provide for the exercise of, or save the right of the person under disability, and prevent the act barring their right until three years after the removal thereof, it may be proper to pursue still further the inquiry relative to the use of the words " this act shall not be a bar to such action during the continuance of such disability, &c." It has been already stated, that the limitation act applies to actions on official bonds and recognizances, on which the right of action was given by previous legislative acts; therefore, had these words been omitted when the act expressly declared, that " no action shall be brought after six years from date of bond," there would not have existed in such cases, after the expiration of six years, any right of action upon a cause of action accruing during disability, so long as the disability continued, for the party claiming it would only be entitled according to the act, and not as in other cases, by virtue of a contract; therefore, the right of action would accrue only on the removal thereof, and exist during the three years thereafter. It is evident the effect would be to deprive the husband upon all such causes of action, of the right to sue during the coverture. Hence appears the necessity for using the words in the 6th section : " that the act shall be no bar to such action during the continuance of the disability," for thereby the right of action as derived from former legislative acts is retained, and the repeal thereof by the last act prevented. The proviso does not like former acts, save the rights of persons under disability, but provides how and when they shall be enjoyed or exercised, and by excluding the operation of the act during disability, the effect is the same as a saving clause. The proviso may also have been adopted intead of the saving clause, to avoid the doubt which was once suggested upon that of the 21 *Jac.* 1, *ch.* 16,

which saved the rights of persons under disability, and allowed six years *after,* &c.; it was in the case of *Chandler* vs. *Hallet, 2 Saund. Rep.* 121, suggested that no right of action existed during the continuance of the disability, and the supposition was founded on the word " after," but this was not regarded by the court.   The English statutes, therefore, did not bar the action during the continuance of the disability, and the words used in our act have introduced no new rule upon the subject, nor varied the rule in the law of limitation.

Having considered the peculiar phraseology of the 6th section, and ascertained the necessity and propriety of the words used to produce the same result that flows from the saving clause of former acts, and of all the English statutes, I shall now proceed to inquire which are the husband's rights, and how they are affected by the statute of limitations.   I have already remarked, he is not personally embraced within the proviso of the act.   The case there contemplated, so far as the person is concerned, is that of a feme covert, who being entitled to the action, becomes by marriage disabled, and by the law of coverture incapable of bringing the action; therefore, the proviso protects her righ'; and, as against her action, the act does not run during her disability, nor does the act operate as a bar until three years after the removal thereof.   But as the husband comes not within the reason of the proviso and is under no disability, if the action instituted by him to recover his wife's chose in action is his action, there being a complete cause of action, it follows as a necessary consequence of the established rule, that the act attaches.   It is true he derives the right to the chose in action from and through his wife, but the remedy or action brought to reduce it to possession is his act or action and not hers.   By the marriage he acquires and the law confers upon him the right of action; the necessity he is under of joining the wife does not impair his right of action ; it is a marital right, perfect and exclusively under his control and direction, unaffected by her assent or dissent.   Now, according to the long established and received opinion, all actions brought by the husband in right of his wife during coverture to reduce the wife's choses in action to possession are the actions of the husband, and although the disability of the wife will not avail him so as to prevent the act attaching and running against his right of action, yet until the cause of action accrues, the act of limitation cannot attach or commence running.

Such is the rule in all causes of action founded on contract; and

in the present case, the proviso in the 6th section excludes the operation of the act when the cause of action accrues during disability. Hence I consider the husband's right of action is founded on the accruing of the cause of action, and his exemption from the limitation in the 1st section arises from the fact, that the cause of action accrued during the disability of the feme, and therefore entitles him to the extended time, or three years before the act bars his right. The limitation never acts so long as the person entitled to the remedy either by infancy, coverture, or incompetency of mind is disabled; it is a personal privilege granted on account of the personal disability, but is incapable of transfer either to the personal representative on death, or a husband by marriage. Upon the marriage or death, there being a person on whom the law confers the right of action, and who is under no disability the act attaches, and has always been held as then commencing to run, provided the cause of action has accrued.

If then in the present suit the record avers the fact that the cause of action accrued during coverture, the suit instituted within three years thereafter was not barred. This I consider the result of the legal and correct construction of the 6th section of our act of limitation, and it is in accordance with the adjudged cases, as well in England as our own State.

The first case I shall advert to is the decision made by the High Court of Errors and Appeals of this State, in the case of *Shankland's lessee,* in which the husband being barred as to his right, brought the action in right of his wife joining her name in the suit; and as the wife's right was within the act of limitation, or the saving clause thereof, it was contended that he was protected because she was under the disability of coverture, and the point decided by the court was, that the saving clause of the act could not be extended to the husband, because he was under no disability.

The same principle we find adopted in the case of *Hulm* vs. *Heylock, Cro. Car.* 200, under the statute 4 *Hen.* 7, *chap.* 24, J. M. being seized of land devised it in fee to J. G. an infant of the age of three years. The son and heir of J. M. entered and levied a fine with proclamations in the life of J. G. being within age, who afterwards died being within age, the wife of Heylock being his sister and his heir. It was decided that the fine and non claim barred the husband, who had suffered the five years to pass.

In Doe on the demise of *Wright* vs. *Plumptree,* 3 *Barn. & Ald.* 474, the husband who was the lessor of the plaintiff, and claimed in right of his wife, the defendant having levied a fine with pro-

clamations was thereby barred, he not having entered within five years after his title accrued. In this case *Best*, J., remarked, that although the wife, if she survived her husband, would be entitled to enter within five years after his death, yet that her husband not having made an entry or brought his action within the time prescribed, was barred by the fine. It was contended on a motion for a new trial, that the husband who claimed in right of his wife might enter at any time during the coverture. That it is clear an infant by his guardian might avoid a fine by an entry at any time during his infancy; and that by parity of reason a husband claiming in right of his wife might avoid the fine during coverture, for the wife's interest, it was said, is kept alive during the whole period of coverture. But the court were clearly of opinion, that the husband not having entered within the five years after his right accrued was barred by the fine; and the case of *Hulm* vs. *Heylock* was referred to as deciding the point.

It has been suggested that the construction I have given to the 6th section, will not effect the object of the act of limitation. For it is said, the right of action of the wife continuing until three years after her discoverture, the husband as her administrator, if he survives, will then be enabled to bring an action, or the wife surviving may bring her action. This would be the case should the husband neglect his right of action. But the objection is not well founded, for it is to be presumed that in all cases, the husband will take care of his own right of action, while he may and has the power to do it, and not abandon the exercise thereof because he may possibly survive his wife and gain a new right of action as her administrator. If he does assert his marital right, then the object of the act is accomplished, and the litigation settled within three years from the accruing of the cause of action, while the parties interested are presumed to be cognizant of their rights, and the vouchers and evidence can be available. The husband's action being prosecuted extinguishes the wife's right of action, for the chose in action being thereby reduced by the husband into possession, the property therein becomes his absolutely, and nothing remains to her surviving, nor can any right be transmitted on her death to her administrator. Hence it appears, that the construction which limits the husband's right of action to three years from the accruing of the cause of action does sustain the policy of the act of limitation, and therefore must necessarily conduce to the peace of society; for it is the interest of the public that there should be an end of controversy.

Having considered the case with respect to the construction of the 6th section of the limitation act and arrived at the conclusion, that it is not the disability of the wife, but the accruing of the cause of action during disability which determines the time when the act begins to run as against the husband's right of action, I shall now proceed to the other matters relied on as distinct grounds of error.

The first I shall advert to is the insufficiency of the replication, and whether the objection taken can avail the plaintiff upon the general demurrer. It has been insisted that the omission to allege and aver the full age or maturity of all the children on whose arrival to the age of maturity the estate was to be divided, is fatal, for without it no cause of action appears.

This matter has been relied on as well against the replication to the plea of the statute of limitations, as in the assignment of the breaches. In reference to the omission in the assignment of the breaches, it has been said the verdict cures the defect and that in the replication to the plea of the statute of limitations it was not necessary, as the plea to which the replication applies admits the cause of action. If the omission be a mere defect in the form of stating the right or title, then the verdict and judgment would preclude the party from taking advantage thereof as error. The distinction is clearly recognised by lord Mansfield in the case of *Rushton* vs. *Aspinall, Doug.* 658. He says, on looking into the cases we find the rule to be, that where the plaintiff has stated his title or ground of action defectively or inaccurately, because to entitle him to recover, all circumstances necessary in form or substance to complete the title so imperfectly stated, must be proved at the trial, it is a fair presumption after verdict, that they were proved; but that where the plaintiff totally omits to state his title or cause of action, it need not be proved at the trial, and therefore, there is no room for presumption. The case cited from *Shower*, comes within the distinction; for the grant of the reversion was stated, which could not have taken effect without attornment, and therefore, that being a necessary ceremony, it was presumed to have been proved. But in the present case it was not requisite for the plaintiff to prove either the demand on the acceptors or the notice to the defendant, because they are neither laid in the declaration, nor are the circumstances necessary to any of the facts. If they were presumed to have been proved, no proof at the trial can make good a declaration which contains no ground of action on the face of it. The promise alledged to have been made by the defendant is an inference of law, and the

declaration does not contain premises from which such an inference can be drawn. In the case of *Avery* vs. *Hoole, Easter Term,* 18 *Geo.* 3, it is remarked, a verdict will not mend the matter where the *gist* of the case is not laid in the declaration, but it will cure ambiguity; and there is a strong case in print of an action for keeping a malicious bull, where the scienter having been omitted in the declaration it was held bad after verdict. (*Buxendin* vs. *Sharp,* 2 *Salk.* 662; 3 *Salk.* 12.) In *Chitt. on Pl.* p. 319, it is said the omission of the averment of the performance of a condition precedent, or of the excuse for non performance, is fatal on demurrer, or in case of judgment by default; but after verdict the omission in some cases may be aided by the common law intendment, that every thing may be presumed to have been proved which was necessary to sustain the action; for a verdict will cure a case defectively stated, (1 *Saund. Rep.* 228, *n.* 1, *sed vide Doug.* 679; *Cro. Car.* 503; 6 *T. R.* 710.) In the last case the procuring a certificate from the minister as to loss by assured, held necessary before payment could legally be demanded or any right of action accrue. On error the judgment rendered on verdict, for the omission of the certificate, reversed. In this case the pleadings admitted that the certificate had not been procured, and alledged as a reason for the omission, the refusal of the minister. In all the cases, after verdict and judgment, it has been the effort of judges to avoid a reversal, when by any legitimate method they have been able to allow the common law intendment to prevail.

If, therefore, it be possible to apply the rule, in the case now before us, it would be proper to do so, if it could be done consistently with the decided cases and without violating the established rules of pleading. But we are not left to dispose of the case exclusively under the operation of the common law intendment; for supposing it might be thereby concluded, of which there seems to be much doubt, we would be compelled to consider the objection as it meets us under the demurrer to the replication. For if the facts omitted be essential to the right of action, the want of the allegation and averment thereof must be fatal.

In this case, tracing the line of pleading from the declaration, through the plea of the statute of limitations, the replication and demurrer, we find the narr. founded upon the administration bond, upon which alone, and exclusive of collateral matter, the right of action is restricted or limited to six years from the date thereof. The plea of the statute of limitations relies upon the expiration of the time, or

sets up the defence that the six years have elapsed since the date of the bond, before action brought. It admits the execution of the bond and the condition thereof, but denies the right of action or remedy because the six years from date have expired before suit brought. If then the party cannot avail himself of a cause of action which has accrued within the saving of the act or the proviso of the 6th section, the right of action is barred. But if the cause of action has accrued during disability, by the proviso in the 6th section the right of action is continued, and the plaintiff in his replication, by alledging the fact, relies upon it as preventing the bar of his right of action. The proviso contemplated the concurrence of two facts as essential to save the right of action; first disability, and second the accruing of the cause of action during the existence of the disability, without which the right of action is not complete or perfect. Thus it will be perceived that the accruing of the cause of action when relied on to exclude the bar of the act, must be alledged in the replication, so as to present an issue of fact, which may be either by the usual mode, or if the plaintiff replies, stating the facts specially, he must not omit any fact that is essential, as being by its existence or occurrence the foundation of his right of action. The reason why he is required when he undertakes to state the facts specially, to state them all, will be obvious, when we reflect that the omission of any one renders it impossible for the defendant to traverse or deny what is not alledged; and by joining issue on the matter stated, although it might be insufficient yet if true it would be found against him. Therefore to an insufficient replication the defendant is compelled to demur; thereby the facts stated are admitted to be true, but are denied to be sufficient in law. The replication in this case having been demurred to, we are to consider the facts therein stated or alledged to be true, and so considering them, our duty is to determine whether thereby the fact that the right of action accrued during disability is established; for the legal maxim, non apparente et non existente must apply. In this case, from what has been heretofore said, I consider the husband's right of action upon the administration bond, to depend on the accruing of the cause of action during the wife's disability. Hence it will be manifest that the accruing of the cause of action, is the fact essential to be established, and therefore the replication should either alledge that the cause of action accrued during the disability of the wife, and that the action was brought within three years thereafter, or if that is not alledged but the facts stated specially, they must be such as by their existence or

occurrence are averred as equivalent and sufficient to constitute the cause of action. It being a cause of action out of the bond although secured by it, the fact of its being due and payable must be alledged, and if dependent on any event, as the arriving at the age of maturity of A. B. and C., it must be stated and averred that A. B. and C. have arrived at the age of maturity. For if it be only averred that C. has arrived at full age, it does not allege all that is required to establish the event necessary to confer the right of action; and certainly no right of action can accrue until all have arrived at full age. We have only to take the common case of a bond conditioned to divide a sum of money between A. B. and C., when they arrive at full age, there could be no breach until all had arrived at full age; nor could a cause of action accrue prior thereto, and being an event that must happen before any division could be made, it would constitute a condition precedent to the accruing of the right, and no right could accrue until all arrived at full age, and therefore, no cause of action could possibly accrue until then.

We will now take up the replication which the plaintiff below relied on as bringing the case within the proviso of the 6th section, and which has been demurred to by the defendant below. It is in the words following : " precludi non," &c. because he saith that the said John Wilson, carpt. deceased by his said last will and testament, in writing bearing date the 29th day of November in the year last aforesaid, did among other things devise as follows, that is to say : " Item, It's my wish and desire that my estate shall, after taking out the legacies that I have given my daughter, be equally divided between my sons, David, James and daughter Elexine Wilson, when they arrive to the age of maturity ;" and that the said Elexine Wilson afterwards intermarried with and became the wife of the said William Hazzard, on the 9th day of January, A. D. 1834, and that the said Elexine arrived to the age of twenty-one years on the 22d day of June, A. D. 1840, and this suit was brought and instituted within three years after the said Elexine had arrived to the age of twenty-one years or maturity as aforesaid, and this, the said, J. W. H., who sues in this behalf as aforesaid is ready to verify, wherefore he prays judgment, &c.

The facts alleged in this replication are, 1st. that John Wilson deceased, made his will devising his estate to be equally divided between his three children when they arrived to the age of maturity. 2d. The marriage of Elexine with Wm. Hazzard, January 9th, 1834. 3d. The time when Elexine arrived to the age of twenty-one years,

June 22d, A. D. 1840. 4th. That this suit was brought within three years after Elexine arrived to the age of twenty-one years. The demurrer admits the facts as true, and being so do they establish according to what is shown on the face of the replication itself, a right of action? Does not the statement of the testamentary clause disclose the fact, that no division of the estate could be made between his children until they arrived (or when they arrived) to the age of maturity; now after thus disclosing the event on the concurrence of which the right to a division by the testator was made to depend, and consequently, the right of action postponed until the period arrived when they became of full age, upon what ground can it be pretended that one having arrived to full age, by reason thereof is intitled to a division, or can have a right of action. Having shown the right to depend on their all attaining their age of maturity, it would appear right and proper, that the fact should be alleged and averred, that they all had attained the age of twenty-one years or arrived at the age of maturity. For as remarked by Lord Mansfield in the case of *Rushton* vs. *Aspinal*, not being stated and not being a fact necessary to any of the facts charged, the replication does not contain premises from which we are authorized to make the inference that all the children have arrived at full age. Had it been set forth in the replication that Elexine was the youngest of the children, or had the clause of the will so described her, there might then have been some ground from which we could have drawn the inference, but as the matter is now before us on the replication, non constat, that because Elexine has arrived at the age of maturity, or twenty-one years, that the other two children have. Then how can we, until that fact does appear, decide that the cause of action has accrued, or that the right of action under the saving clause of the act or the proviso in the 6th section thereof, has accrued to the wife during disability.

The plaintiff below having omitted to aver the fact that all the children had arrived at the age of maturity, has failed to state the fact essential to his right of action, and therefore, upon the demurrer, the defendant below was entitled to the judgment of the court sustaining his demurrer. This omission the Court of Errors and Appeals consider a fatal defect in the replication, and are unanimous in the opinion that, therefore, the judgment of the Supreme Court should be, and the same is hereby reversed. The defendant in error is ordered to pay the costs of the writs of error and proceedings thereon, and the record is remanded to the court below.

MILLIGAN, *Justice :*—On the 29th of Nov. 1825, John Wilson made his last will and testament, and died on the 20th of Dec., following. The will was proved on the 29th of Dec. 1825, and the executor named in the will having renounced, the defendant, Caleb S. Layton, was appointed by the register, administrator with the will annexed, on the 11th of January, 1826, and thereupon gave the bond upon which the suit below was instituted. The testator, John Wilson, who left to survive him two sons, David and James, and one daughter, Elexine, directed by his will, that his estate after the payment of certain legacies, should be equally divided between his two sons and his daughter, upon their attaining " their age of maturity ;" in other words, upon their attaining the age of twenty-one years. Elexine was married to William Hazzard, on the 9th of Jan. 1834, and attained the age of twenty-one years on the 22d of June, 1840. William Hazzard and Elexine, his wife, claiming a balance as due to her from the defendant Layton, the administrator, on account of her third part of the estate of her father, John Wilson, bequeathed to her as above stated, brought the action of debt in the Superior Court, which is the subject of the writ of error now depending in this court. The record, which is now before the court, exhibits the following pleadings. The declaration counts upon the administration bond of the defendant Layton, who craves oyer of the bond and of the condition, and having set forth the condition on the record, pleads *first,* non est factum ; *secondly,* performance, and *thirdly,* the statute of limitations. To the first plea there is a replication and issue. To the second plea there is an assignment of breaches, rejoinders, surrejoinders and issues ; and to the third plea there is a replication stating the terms of John Wilson's will, that the estate was to be equally divided between the sons, David and James, and the daughter Elexine, when they arrived at their age of maturity, and that Elexine was married to William Hazzard on the 9th of Jan. 1834, and arrived at her age of twenty-one years, on the 22d of June, 1840. To this replication there is a demurrer and joinder in demurrer. In the court below the demurrer was overruled, and judgment rendered against the defendant Layton. The issues joined in the other pleadings were afterwards tried, and a verdict given in favor of Hazzard and wife for the sum of $3,109 84, upon which judgment was rendered in their favor. Several errors have been assigned, but the one mainly relied on in the argument of this cause is the rendition of judgment in favor of the plaintiffs on the demurrer. In relation to which branch of the case, it is contended that

the replication was not a sufficient answer to the plea of the statute of limitations, inasmuch as it neglected to state that David and James, the two sons, had attained their age of twenty-one years as well as Elexine.

In order to understand the objection, it is necessary to consider the terms of the statute itself. The first section of the act declares, that no action shall be brought upon any administration bond after the expiration of six years from its date. In this respect, it differs from all the other sections of the act, in making the time of the limitation run from the date of the bond, instead of the accruing of the cause of action. This section embraces the official recognizance of the sheriff, and administration and testamentary bonds. In the case of all other official bonds, and of all personal actions, the statute does not begin to run but from the accruing of the cause of action, and no reason can be perceived why a different rule should have been established in relation to sheriff's recognizances, and administration and testamentary bonds. The absurdity may follow, that a person may be barred before his cause of action arises. The 6th section provides, " that if the person entitled to any action comprehended within either of the foregoing sections, shall have been at the time of the accruing of the cause of such action under disability of infancy, coverture, or incompetency of mind, this act shall not be a bar to such action during the continuance of such disability, nor until the expiration of three years from the removal thereof."

The result would be, that the common case of a legacy to be paid to a child on his attaining his age of twenty-one years, if he were under fifteen years of age when the will was proved, and the administration or testamentary bond given, would not come within the terms of the proviso. And thus the very bond which was given to secure its payment, among the other duties of the administrator, would be barred by the statute, since supposing the legatee to be a boy, and to be compos mentis, he would be under no disability *when the cause of action arose.* For as the legacy would be payable only, when the individual had attained his majority, at which time alone the cause of action would arise, it results as a necessary consequence that the legatee not being under any disability when the cause of action arose, he would not come within the terms of the proviso, and therefore, would be barred by the first section, which requires that the action should be brought within six years from the date of the bond. It would seem that there must have been some inadvertency in framing the 1st section of this act, which however, the legislature alone is

competent to correct, since the words are positive and explicit. As to the provision of the 6th section, I have no doubt that the words "person entitled to the action," referring as they do to the different disabilities of infancy, coverture and incompetency of mind, refer in the case of coverture to the wife, since the husband cannot be under any disability from that cause, and although it is technically true that the wife's existence is merged in that of the husband, and that she cannot, strictly speaking, be said to be entitled to the action, yet it is apparent that they are meant to be used in reference to her rights, from the provision that the act shall be no bar, during the continuance of the disability, which as has been said, cannot possibly apply to the husband. And although the husband, if he could bring the action in his own name would be barred by the 1st section of the statute, yet as the right of the wife to sue during the continuance of the coverture is expressly preserved, it follows that as she cannot sue in her own name, the effect of the proviso is to preserve the action to the husband and wife during the coverture, and to the wife after the death of the husband, if she survive him.

I am therefore, of the opinion, that an action by husband and wife, comes within the terms of the proviso, if the cause of action accrue during the coverture. But in this case, it is not shown by the replication, that the cause of action has yet arisen, and non constat, that it will arise during coverture. The bond was given on the 11th of January, 1826, and the action was instituted in March 1841. But the proviso of the sixth section declares, that " if the person entitled to the action shall have been *at the time of the accruing of the cause of action*, under disability of infancy, *coverture*, or incompetency of mind, the act shall not be a bar during the continuance of such disability, nor until three years from the removal thereof." In order to avoid the bar of the statute, it was necessary for the plaintiffs to show in their replication that their cause came strictly within the terms of the proviso. In other words, it was necessary to show that the person entitled to the action was under some one of the disabilities of infancy, coverture, or incompetency of mind, *when the cause of action arose.*

Admitting then that wife is the person entitled to the action and is under coverture, and has been so since the year 1834, yet as the cause of action could only arise upon all three, David, James and Elexine, attaining their age of twenty-one years, it was indispensable to show that fact. The replication only stated the fact that Elexine attained her age of twenty-one years, on the 22d of June, 1840; but

does not state that she was the youngest of the three, or that the others are dead, or have attained their age of twenty-one years. It might then be true, that the others, David and James, were minors, or that one of them was so, in which case, the cause of action would not yet have arisen, and might not arise until after the death of William Hazzard; when, if Elexine were living, not having married again, and being discovert when the cause of action arose, she would be barred by the terms of the 1st section. It is an invariable rule, that the replication must be a complete answer to the plea; in this case it clearly is not so, and judgment must therefore be given for the defendant.

As a member of the court below, before whom this case was heard, I think it due to myself as well as to my associates to state, that this objection to the pleadings was not noticed in the argument of the demurrer.

ROGERS, *Judge ad litem.*—The record in this case exhibits a suit brought under the provisions of the act relating to bonds and penal sums in the name of the State, for the use of William Hazzard and Elexine, his wife, against Caleb S. Layton. The action is founded upon the bond given by the defendant as administrator, with the will annexed, of John Wilson, deceased.

The questions necessary to be decided, arise under the demurrer to the plaintiff's special replication to the plea of the act of limitations. That portion of the pleadings opened by the demurrer, consists of the declaration upon the bond, which contains no assignment of breaches; the oyer of the condition and the plea of the act of limitations, and the special replication. This replication states the testator's bequest of the residue of his estate: that the said Elexine intermarried with William Hazzard on the 9th day of January, 1834; that she arrived at the age of twenty-one years, on the 22d day of June, 1840, and that the suit was brought within three years after her arrival at the age of twenty-one, or maturity.

The administration bond is dated the 11th day of January, 1826. The 1st section of the act of limitations declares, that no suit shall be brought upon any administration bond after the expiration of six years from its date. By the 6th section it is provided, that if the person entitled to the action shall have been at the time of the accruing of the cause of action, under either of the disabilities mentioned, the act "shall not be a bar to such action during the continuance of such disability, nor until the expiration of three years from

the removal thereof." The great object of all statutes of limitation is to prevent the litigation of stale demands. Their provisions are founded in public policy, and their operation is upon the *laches* of the party entitled. They are upon the remedy alone. Such being their aim and scope it is indispensable, under the great principles of common right, that a perfect right of action should exist before a forfeiture arising from default can begin to attach.

A remedy for legal injury must be provided for by fundamental law. It is one of the first principles of every social compact, and is expressly secured by the constitution. Legislative power may limit and restrain, but cannot *take it away* without infringing upon those essential and inalienable rights, which are placed beyond its control. In accordance with these principles, it has been uniformly decided, that acts of limitation do not begin to act upon the remedy until the *right*, under the general rules of law, has been fully consummated. This can occur only where there is a competent jurisdiction, a person to sue and to be sued, and a complete cause of action.

In this case it is contended, that the plea of the act presents an absolute bar to the remedy of the husband, and that the action is exclusively his. It is admitted that had Elexine Hazzard remained sole, she would have had a subsisting right of action at and after the period when the present suit was instituted. The assumption that the title of the husband is affected is founded on the fact, that at the moment of the marriage there was a person competent to sue, although the wife was still an infant. By the marriage the husband acquired a conditional right to the choses in action of the wife, but still subject to all their original contingencies. Here the replication alleges, that by the will the wife's proportion of the residue was not payable until she arrived at maturity, or the age of twenty-one years. The husband then could not reduce this chose in action into possession until the happening of the event upon which it was made payable. Had he sued previous to the wife's arrival at maturity, the action would have been prematurely brought. A complete cause of action did not exist until the time of payment had elapsed. The replication, therefore, substantially alleges, that the cause of action did not accrue until the 22d day of June, 1840. The writ was issued on the 19th of March, 1841.

Marriage operates as a conditional gift to the husband of *all* the the wife's choses in action. The cause of action here is the breach of the condition of the bond, which could not occur until the failure to pay over at the time appointed by the testator. The husband at

some period acquired a right to sue for this default. His remedy upon *this cause of action* cannot be abrogated. If then the act of limitations applies, the remedy is barred prospectively, before the cause of action is complete, and the husband has lost by *necessity and without laches*, a right secured to him by the general rules of law, and the provisions of the act under which this suit is instituted.

At the time of the intermarriage in 1834, the wife being an infant, the obligation of the administrator was still subsisting, and unaffected by the statute. The husband then acquired his marital rights, and became entitled to avail himself of the provisions of the act relating to bonds and penal sums, as soon as his right of action should be perfected. Had the legislature subsequently repealed that law, without substitution, and thus deprived him of redress, it could not have affected his rights, because as to him their action would have been void. But the positions assumed on behalf of the defendant, if sustained, do in effect operate as a repeal of the remedy existing at the time when the marital rights were acquired, and show that the husband never could have sued on this particular cause of action. Such a construction would lead inevitably to the conclusion, that the statute is unconstitutional in its application to the circumstances of the present case. But this difficulty is avoided by referring to the general rule, that the statute does not begin to run until there is a complete cause of action, as well as competent parties and jurisdiction.

Verbal or literal construction has very seldom prevailed in the interpretation of the acts of limitation. The courts almost invariably look only to their spirit and policy. The first section of our statute contemplates a limitation commencing with the *date* of the bond. The proviso regards only the *accruing* of the *cause of action*, and saves the right to sue in all cases where the specified disabilities exist at *that* time.

If, where no disability exists, the act is to be held a bar in cases where the cause of action does not accrue until after the period of limitation has elapsed, then it forestalls the remedy, and impairs the very obligation of the contract. Besides this, such a construction would be directly adverse to the acknowledged policy of preventing delay in the prosecution of suits, and would not only impose the penalty of default upon an innocent party, but also introduce a most absurd conflict of principles. From these considerations I draw the conclusion, that notwithstanding the words of the 1st section, the act is not a bar to the present suit. This view of the case is entirely

independent of the fact of disability, and the several questions of construction arising under the proviso.

The writ was issued within a few months after the cause of action was complete, and the replication specially alleges that the suit was brought within three years. The several questions of the right of the husband to avail himself of the wife's disability, and whether such right continues during the whole period of coverture do not inevitably arise. I sit as a judge in and for the present controversy alone. The tenor of my commission is to try and decide this particular case. I am unwilling, therefore, to express my views upon any questions beyond those which *must* be decided. Such opinions would be particularly extra-judicial and without authority.

There remains, however, another point to be disposed of. It is contended, that the plaintiffs have shown no right to sue, inasmuch as they have stated in their replication, that the residue of the estate was to be equally divided between the testator's three children, when they arrived at maturity; and there is no allegation that they had all arrived at such age at the time of bringing the action. Were this a question of construction arising upon the will of John Wilson, with that will before the court, it is very probable that there would be little difficulty in its settlement. But it is insisted upon as a defect in pleading, and the omission of a most material allegation.

The replication is unquestionably argumentative, and the right of the children of the testator to sue as they *severally* arrived at maturity, must be a mere matter of *inference* from the words of the will as stated. Considering it as a question of construction, we would be at liberty to look through the record to ascertain in what aspect the pleader has elsewhere placed it. The rule which forbids resort to other branches of the pleadings to help out the allegations, where there are no words of reference or connexion, does not apply to the question of construction. If the matter stated be capable of different meanings, it certainly does not clash with any principle to interpret it in that sense in which the party framing the allegation must be understood to have used it, if he intended that his statement should be consistent. This is the established rule even in criminal proceedings. By reference, then, to the other replications it will be found that in the 1st, 2d, and 3d breaches, the mode of statement is such as to render the inference no longer doubtful. It is expressly alleged, that the division was to be made when *all* the children had arrived at maturity; and that fact is nowhere stated, nor is it in any

portion of the pleadings set forth that the money was payable as they *severally* arrived at age.

But this matter cannot properly be considered as a thing of inference, or a question of construction. It is an allegation of a *fact* material to the present right of action. The pleader could not, except in violation of well known principles, set it forth by way of argument or inference. As an allegation of fact, if the meaning of the words be equivocal, the rule requires that they be construed most strongly against the party pleading.

But is the statement *equivocal?* What *is* the *fact* alleged? That the residue of the testator's property was to be " equally *divided* between his sons David, James, and daughter, Elexine Wilson, when *they* arrive to the age of maturity." *Were* this a question of inference, from these words alone it would be difficult to construe the meaning of the testator to be payment to the children as they respectively arrived at age. To *divide* is to *separate and bestow in shares, to part an entire thing, to make partition of among a number.* It contemplates a *single act ;* a disunion of the several parts at the same moment; and that moment is here alleged to be when the parties arrived at maturity. But as an allegation of fact is the statement equivocal, or capable of different meanings? It sets forth the *time* of payment, the period when the cause of action is complete. It is not intended to show the *mode* of *distribution,* but as an answer to the plea, indicates that the money was not payable until a particular event ; and that therefore, inasmuch as there was not a complete cause of action until that period or event, that the statute is not a bar, although I have considered the replication, notwithstanding its defects of form, as sufficient for that purpose; yet in its present aspect I am reluctantly brought to the conclusion, that in the absence of the allegation that all the children had arrived at maturity, the plaintiffs' have not exhibited a sufficient title to sue at the time the action was instituted. (*a*) Had it been alleged that the money was payable to them as they *severally* arrived at maturity, or that *all had* arrived at that age, or that the daughter was the *youngest child,* it might have been held sufficient. As the matter stands, however, I have no doubt that it is a fatal defect under the demurrer, as it would

---

(*a*) The plea of the act of limitations admits the cause or consideration of the action still existing, but it cannot cure the omission of matter necessary to exhibit a perfect title to sue.

have been on a motion for a nonsuit had such question been presented to the court below.

Judgment reversed.